UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| J&J SPORTS PRODUCTIONS, INC., | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | CIVIL ACTION NO. 3:16-cv-2104-B |
| | § | |
| OLD TOWN RANCHERS, INC., | § | |
| ALFREDO HINOJOSA, and JACK | § | |
| MICHAEL STADTMAN, | § | |
| | § | |
| Defendants. | § | |

MEMORANDUM OPINION AND ORDER

Before the Court is Plaintiff J&J Sports Productions, Inc.'s Motion for Final Default Judgment. Doc. 13. For the reasons that follow, the Court concludes that Plaintiff's motion is **GRANTED IN PART** and **DENIED IN PART**.

I.

BACKGROUND

This is a case about alleged violations of the Federal Communications Act of 1934, as amended, 47 U.S.C. §§ 553 and 605 (FCA). Plaintiff J&J Sports Productions, Inc. (J&J) is in the business of marketing and licensing commercial exhibitions of pay-per-view closed-circuit prizefight events. Doc. 13-1, Pl.'s Ex. A, Affidavit of Thomas P. Riley (Riley Aff.) ¶ 4. As part of this business, J&J acquired the proprietary rights to exhibit and sub-license the closed-circuit telecast of "The One": Floyd Mayweather, Jr. v. Saul Alvarez, WBC Middleweight Championship Fight Program, including undercard and preliminary bouts (the Event). *Id.* ¶ 4; Doc. 1, Compl. ¶ 7. It then marketed and distributed exhibition rights to the Event to commercial locations throughout Texas in exchange

- 1 -

for a fee. *Id.* ¶ 9. To prevent unlicensed establishments from exhibiting the Event without a license, the transmission was electronically coded or "scrambled." *Id.* ¶ 10. Establishments that had purchased the broadcast rights were provided with electronic decoding equipment to unscramble the signal. *Id.* ¶ 12. Defendants did not obtain a license, but nevertheless intercepted and broadcast the transmission of the Event to the patrons of their establishment, Medusa, on September 14, 2013, according to J&J. *Id.* ¶ 13.

On July 20, 2016, J&J filed this case against Defendants, alleging they had willfully violated the FCA for commercial gain. *Id.* ¶ 14. It asks for statutory and additional damages under the FCA; a permanent injunction preventing Defendants from intercepting or exhibiting future J&J programs without a license; court costs; attorney's fees; and pre- and post-judgment interest. *Id.* at 5–6.

J&J served all Defendants with its Complaint by October 31, 2016. Doc. 6, Summons Returned Executed as to Jack Michael Stadtman; Doc. 9, Summons Returned Executed as to Alfredo Hinojosa; Doc. 10, Summons Returned Executed as to Old Town Ranchers, Inc. Nothing in the record indicates that Defendants ever responded. Accordingly, J&J requested that the court clerk make an entry of default on January 18, 2017. Doc. 12, Req. for Entry of Default. That same day, J&J moved the Court for a default judgment. Doc. 13, Mot. For Final Default J. (Pl.'s Motion). The clerk issued an entry of default the next day. Doc. 14, Clerk's Entry of Default. Now the Court considers J&J's Motion for Default Judgment. To date, Defendants have not made an appearance in this case.

## II.

## LEGAL STANDARD

"When a party against whom a judgment for affirmative relief is sought has failed to plead or

otherwise defend . . . the clerk must enter the party's default." Fed. R. Civ. P. 55(a). Once default has been entered, the Court may enter a default judgment against the defaulting defendant upon motion of the plaintiff. Fed. R. Civ. P. 55(b)(2). Through the entry of default judgment, the "conduct on which liability is based may be taken as true as a consequence of the default." *Frame v. S-H, Inc.*, 967 F.2d 194, 205 (5th Cir. 1992) (citations omitted). In considering a motion for default judgment, the court accepts as true the well-pleaded allegations of facts in the complaint. *Nishimatsu Constr. Co., Ltd. v. Hous. Nat'l Bank*, 515 F.2d 1200, 1206 (5th Cir. 1975). When "all elements of [a] cause of action are present by implication," a complaint is "well-pleaded" for default judgment purposes. *Wooten v. McDonald Transit Assocs., Inc.*, 788 F.3d 490, 499 (5th Cir. 2015).

In determining whether a default judgment should be entered against a defendant, courts have developed a two-part analysis. *See, e.g.*, *Ins. Co. of the W. v. H & G Contractors, Inc.*, No. C-10-390, 2011 WL 4738197, at *2, 3 (S.D. Tex. Oct. 5, 2011). First, the court must consider whether entry of default judgment is appropriate under the circumstances. *Lindsey v. Prive Corp.*, 161 F.3d 886, 893 (5th Cir. 1998). The factors relevant to this inquiry include: (1) whether material issues of fact exist; (2) whether there has been substantial prejudice; (3) whether the grounds for default are clearly established; (4) whether the default was caused by a good faith mistake or excusable neglect; (5) the harshness of a default judgment; and (6) whether the court would think itself obliged to set aside the default on the defendant's motion. *Id.* Second, the court must assess the merits of the plaintiff's claims and find sufficient basis in the pleadings for the judgment. *Nishimatsu Constr.*, 515 F.2d at 1206. Although the defendant may be in default, "[t]he defendant is not held to admit facts that are not well-pleaded or to admit conclusions of law." *Id.*

# III.

# ANALYSIS

Applying this two-part analysis, the Court ultimately concludes that a default judgment here (1) is procedurally warranted and (2) is supported by a sufficient factual basis in J&J's Complaint. The valuation of damages, however, requires a hearing as the Court is unable to determine the amount of damages with mathematical calculation by referencing information in the pleadings and supporting documents. *See James v. Frame*, 6 F.3d 307, 310 (5th Cir. 1993). As discussed below, the Court finds that J&J is entitled to a default judgment against Defendant for their alleged FCA violations, but it must supplement the record with additional evidence before damages are awarded.

A.  *Whether An Entry of Default Judgment is Procedurally Warranted*

After applying the six *Lindsey* factors to J&J's Motion, the Court determines that default judgment is procedurally warranted. First, Defendants have not filed any responsive pleadings so there exists no material issues of fact. *Lindsey*, 161 F.3d at 893; *Nishimatsu Constr.,* 515 F.2d at 1206 (noting that "[t]he defendant, by his default, admits the plaintiff's well-pleaded allegations of fact"). Second, Defendants' "failure to respond threatens to bring the adversary process to a halt, effectively prejudicing Plaintiff's interests." *Ins. Co. of the W.*, 2011 WL 4738197, at *3 (citing *Lindsey*, 161 F.3d at 893). Third, given that Defendants have had sufficient time to either file an answer to J&J's Complaint, or else explain why they have not done so, the grounds for default are clearly established. *Cf. Elite v. KNR Group*, 216 F.3d 1080, 2000 WL 729378, at *1 (5th Cir. May 19, 2000) (per curiam) (unpublished table decision) (holding default judgment to be inappropriate where defendant sent letter to court explaining his failure to appear was due to financial privation). Fourth, there is no evidence before the Court to suggest Defendants' silence is the result of a "good faith mistake or

excusable neglect." *Lindsey*, 161 F.3d at 893. Fifth, J&J seeks only the relief the law provides it, and Defendants have no applicable defense for their claims, at least as far as the Court can see, which "mitigat[es] the harshness of a default judgment." *John Perez Graphics & Design, LLC v. GreenTree Inv. Grp., Inc.*, No. 12-cv-4194-M, 2013 WL 1828671, at *3 (N.D. Tex. May 1, 2013). Sixth, and finally, the Court is not aware of any facts that would give rise to "good cause" to set aside the default, if it were challenged by Defendants. *Lindsey*, 161 F.3d at 893.

B.  *Whether There Is a Sufficient Basis for Judgment in the Pleadings*

In light of the entry of default, Defendants are deemed to have admitted the allegations set forth in J&J's Complaint. Nonetheless, the Court must review the pleadings to determine whether they present a sufficient basis for J&J's claim for relief. *Nishimatsu Constr.*, 515 F.2d at 1206. In conducting this analysis, the Fifth Circuit has looked to the Rule 8 case law for guidance:

> Rule 8(a)(2) requires a pleading to contain "a short and plain statement of the claim showing that the pleader is entitled to relief." The purpose of this requirement is "to 'give the defendant fair notice of what the . . . claim is and the grounds upon which it rests.'" *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)). The factual allegations in the complaint need only "be enough to raise a right to relief above the speculative level, on the assumption that all the allegations in the complaint are true (even if doubtful in fact)." *Id.* (footnote and citations omitted). "[D]etailed factual allegations" are not required, but the pleading must present "more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

*Wooten v. McDonald Transit Assocs., Inc.*, 788 F.3d 490, 498 (5th Cir. 2015).

J&J alleges Defendants "willfully intercepted or received the interstate communication of the Event," or, alternatively, "assisted in the receipt of the interstate communication of the Event." Doc. 1, Compl. ¶ 13. Then, according to J&J, Defendants "transmitted, divulged and published [the Event] . . . to patrons within [their establishment] . . . willfully and with the express purpose and

intent to secure commercial advantage and private financial gain." *Id.* ¶¶ 13–14. This not only "infringed upon Plaintiff's exclusive rights" to broadcast the Event, *id.* ¶ 14, but also violated 47 U.S.C. §§ 553 and 605, *id.* ¶ 18, according to J&J.

A person violates 47 U.S.C. § 605 when he "intercept[s] any radio communication . . . [or] receive[s] or assist[s] in receiving any interstate or foreign communication by radio and use[s] such communication . . . for his own benefit or for the benefit of another not entitled thereto." 47 U.S.C. § 605(a). A person violates 47 U.S.C. § 553 when he "intercept[s] or receive[s] or assist[s] in intercepting or receiving any communications service offered over a cable system" without authorization. *Id.* 553(a)(1). And when a person intercepts satellite or cable transmissions without authorization, several courts have held that it violates both sections. *Entm't by J & J, Inc. v. Al-Waha Enters.*, 219 F. Supp. 2d 769, 774 (S.D. Tex. 2002) (collecting cases). Here, J&J alleges the Event was transmitted via an "electronically coded or 'scrambled'" satellite signal, and that Defendants intercepted it without authorization and exhibited it to patrons of their establishment for their own commercial benefit. Doc. 1, Compl. ¶¶ 10–14. After reviewing the Complaint, the Court concludes that J&J's allegations state a viable claim for relief and are sufficient to provide Defendants with "fair notice" of its claim that they "transmitted, divulged and published [the Event] . . . to patrons within [their establishment]" in violation of the FCA. *Id.* ¶ 13.

C. *Damages*

Although a default judgment against a defendant conclusively establishes its liability, it does not establish the amount of damages. *U.S. for Use of M-CO Constr., Inc. v. Shipco Gen., Inc.*, 814 F.2d 1011, 1014 (5th Cir. 1987) (noting that after default the plaintiff's well-pleaded factual allegations are taken as true, except regarding damages). Accordingly, it remains J&J's burden to provide an

evidentiary basis for the damages it seeks.

Damages are not to be awarded without a hearing or a demonstration by detailed affidavits establishing the necessary facts. *See United Artists Corp. v. Freeman,* 605 F.2d 854, 857 (5th Cir. 1979). If the amount of damages can be determined with mathematical calculation by reference to the pleadings and supporting documents, however, a hearing is unnecessary. *James,* 6 F.3d at 310.

Here, J&J alleges Defendant violated section 605 of the FCA, which allows aggrieved parties to choose between receiving statutory or actual damages. 47 U.S.C. § 605(e)(3)(C)(I). Statutory damages call for an award between $1,000 and $10,000, per violation, as the Court finds just. *Id.* § 605(e)(3)(C)(i)(II). If a Court finds a defendant violated the statute "willfully and for purposes of direct or indirect commercial advantage or private financial gain," it may increase the damage award by up to $100,000, at its discretion. *Id.* § 605(e)(3)(C)(ii). In any event, an aggrieved party who prevails receives full costs, including reasonable attorney's fees. *Id.* § 605(e)(3)(B)(iii).

### 1. Statutory Damages

J&J maintains that "it would be impossible to determine the full extent of the profits" it lost and "the additional damages sustained . . . as a result of Defendants' unlawful actions." Doc. 13, Pl.'s Motion ¶ 11. For that reason, it requests statutory, rather than actual, damages, asking for $10,000—the statutory maximum—against Defendants.[1] *Id.* J&J argues it is entitled to the maximum because, as a result of Defendants' actions, it lost revenue, was denied "'value, benefits and profits

---

[1] The Court notes that J&J cannot recover under both sections 553 and 605, even if it can demonstrate Defendants violated both. *Al-Waha Enters.,* 219 F. Supp 2d at 775. Therefore, the damages inquiry will focus on section 605, which allows J&J a greater recovery. *Id* (noting that a majority of courts dealing with a violation of both sections award damages under only § 605 because that provision allows for greater recovery by plaintiffs).

[it would have] derived' from the unauthorized broadcast of the Event[,]" and lost out on "the value of [th]e 'business investment, business opportunities and goodwill'" it might have otherwise enjoyed. *Id.* ¶ 12 (quoting *Am. Television & Commc'ns Corp. v. Floken, Ltd.*, 629 F. Supp. 1462, 1466 (M.D. Fla. 1986)).

To support these assertions, J&J presents an affidavit from Thomas P. Riley, whose firm was charged with "the discovery, investigation and prosecution of claims arising from the theft or privacy of" the Event. Doc. 13-1, Pl.'s Ex. A, Riley Aff. ¶ 3. Riley insists that Defendants' actions threaten J&J's existing and ongoing viability. *Id.* ¶¶ 12–15. He explains that, by broadcasting sports events like this one without obtaining the required license, Defendants and other proprietors are effectively able to either not charge their patrons a fee, or else charge them a fee less than what other, authorized establishments are required to charge. *Id.* ¶ 12. This causes establishments that lawfully broadcast programs to lose business, patrons, and, ultimately, the ability to contract with J&J to obtain future licenses to broadcasts. *Id.* In sum, Defendants' actions damaged the goodwill and reputation of J&J, and impaired both its right and ability to control and receive fees for transmitting its programs. *Id.* ¶ 14.

Courts have assessed different amounts of statutory damages when presented with violations similar to Defendants'. *See Joe Hand Promotions, Inc. v. Alima*, No. 13-cv-0889-B, 2014 WL 1632158, at *4 (N.D. Tex. Apr. 22, 2014) (awarding base statutory damages in the amount of $5,000); *J & J Sports Prods., Inc. v. Beck*, No. L-13-57, 2013 WL 5592333, at *2 (S.D. Tex. Oct. 9, 2013) (same); *J & J Sports Prods., Inc. v. Q Café, Inc.*, No. 10-cv-2006-L, 2012 WL 215282, at *5 (N.D. Tex. Jan. 25, 2012) ($10,000); *Al-Waha Enters.*, 219 F. Supp. 2d at 776 ($5,000).

Considering the need to deter future FCA violations, and the fact that Defendants would

have faced a sublicensing fee of some amount, the Court determines that a reasonable amount of statutory damages is equal to the rate Defendants would have paid in sublicensing fees plus an amount that the Court, in its discretion, deems reasonable to deter future violation.

But the Court is unable to calculate the amount Defendants would have paid in sublicensing fees with mathematical calculation. While J&J provides affidavits to help determine that amount, the affidavits reveal discrepancies between capacity estimations. *See* Doc. 13-1, Ex. A-3, Rate Card; Doc. 13-1, Ex. A-2, Aff. of Carter Heltzen (Heltzen Aff.) (estimating the capacity of the establishment at 200 people); Doc. 13-1, Ex. A-2, Aff. of David Shafer (Shafer Aff.) (estimating the capacity of the establishment at 350 people); Doc. 13-1, Ex. A-2, Aff. of Michael Daniele (Daniele Aff.) (estimating the capacity of the establishment at 350 people). The capacity must be clarified in order for damages to be accurately determined. Doc. 13-1, Ex. A-3, Rate Card (rate for establishment with 100-200 minimum seating is $6,200 while the rate for an establishment with 200–300 minimum seating is $8,200). Accordingly, the Court does not find it appropriate to award statutory damages until J&J has an opportunity to supplement the record with evidence clarifying the discrepancy.

2. <u>Additional Damages</u>

J&J requests an additional $50,000 in damages pursuant to 47 U.S.C. § 605(e)(3)(C)(ii), based on its allegation that "Defendants' actions were willful and 'for purposes of direct or indirect commercial advantage or private financial gain.'" Pl.'s Mot. ¶ 16–22 (citations omitted). J&J presents no evidence demonstrating Defendants willfully violated the FCA, but insists they could not have "innocently" accessed the Event broadcast given how complex it is to intercept a transmission. *Id.* ¶ 17. Courts have generally found this reasoning persuasive, as there are limited means by which

defendants can access closed-circuit, pay-per-view events, and because it would be unlikely for an establishment to intercept such broadcasts by chance. *See Al-Waha Enters.*, 219 F. Supp. 2d at 776-77 (finding willfulness given the "limited methods of intercepting closed-circuit broadcasting of pay-per-view events" and "the low probability that a commercial establishment could intercept such a broadcast merely by chance"); *Q Café Inc.*, 2012 WL 215282, at *5 (citing *Time Warner Cable v. Googies Luncheonette, Inc.*, 77 F. Supp. 2d 485, 490 (S.D.N.Y. 1999) ("There can be no doubt that the violations were willful and committed for purposes of commercial advantage and private gain. Signals do not de-scramble spontaneously, nor do television sets connect themselves to cable distribution systems.")). Based on this line of cases, the Court likewise concludes that J&J's evidence and allegations are sufficient to support a finding of willfulness.

Further, the record indicates that Defendants exhibited the Event for either direct or indirect commercial gain, as there were patrons in the establishment on the evening in question. *See* Doc 13-1, Ex. A-2, Heltzen Aff. (recording an average of 26 people in attendance over the course of his visit); Doc. 13-1, Ex. A-2, Shafer Aff. (recording an average of 50 people in attendance over the course of his visit); Doc. 13-1, Ex. A-2, Daniele Aff. (recording an average of 52 people in attendance over the course of his visit). Additionally, Defendants' establishment charged a $15 cover for admission and displayed the Event on at least fourteen televisions, most of which were big screen televisions. *Id.* These facts have been enough for other courts to find a commercial motive. *See Al-Waha Enters.*, 219 F. Supp. 2d at 776 (looking for evidence that defendant charged admission as direct evidence of commercial motive); *Joe Hand Promotions, Inc. v. 152 Bronx*, 11 F. Supp. 3d 747, 756 (S.D. Tex. 2014) (finding the number of televisions broadcasting the event and a cover charge factors relevant to determining commercial motive). It is enough for this Court, as well. There is

sufficient evidence to establish Defendant had a commercial motive.

Having found willfulness and commercial motive, the Court moves to the statute's language. The FCA allows "the court[,] in its discretion," to "increase the award of damages, whether actual or statutory, by an amount of not more than $100,000" for willful violations. 47 U.S.C. § 605(e)(3)(C)(ii). This leeway has led courts to different approaches and results. *See, e.g., Alima*, 2014 WL 1632158, at *5 (awarding four times the statutory base award as additional damages where defendant charged a cover and showed the event on nine screens to approximately 85 to 125 patrons); *Q Café, Inc.*, 2012 WL 215282, at *5 (awarding five times the statutory base award where the defendant broadcast the event in an urban area and the Court noted the importance of deterring future violations); *Beck*, 2013 WL 5592333, at *3 (awarding three times the base because defendant did not charge a cover charge, only thirty patrons viewed the event, and defendant was not a repeat offender); *Al-Waha Enters.*, 219 F. Supp. 2d at 777 (awarding three times the base for a willful violation); *Kingvision Pay-Per-View, Ltd. v. Scott E's Pub, Inc.*, 146 F. Supp. 2d 955, 961 (E.D. Wis. 2001) (awarding five times the base statutory amount because defendant advertised the event, charged a cover, and showed the event on five television monitors). Here, Defendants' establishment was equipped with at least fourteen televisions, including a large projection screen made up of nine 64-inch screens, and the Event was displayed on all screens. *See* Doc 13-1, Ex. A-2, Heltzen Aff.; Doc. 13-1, Ex. A-2, Shafer Aff.; Doc. 13-1, Ex. A-2, Daniele Aff. While as many as fifty patrons were in attendance and there was a cover charge, there is no evidence that Defendants advertised their establishment as broadcasting the Event in order to attract a greater audience. *Id.*

Based on the damages awarded by other courts, the evidence currently before this Court, and the need to deter future violations, the Court finds that an additional damages award of three times

the base amount, once determined, is reasonable. Because the Court first needs to determine the base amount, the Court does not find it appropriate to award additional damages before J&J has an opportunity to supplement the record with more evidence.

### 3. Attorney's Fees and Costs

Under the FCA, the Court is required to order the recovery of full costs, including attorney's fees, to an aggrieved party who prevails. 47 U.S.C. 605(e)(3)(B)(iii). Here, that is J&J, who seeks a one-third contingent fee or, alternatively, $1,000 worth of attorney's fees. Doc. 13, Pl.'s Motion 11, no. 3; Doc. 13-1, Ex. B, Affidavit of David M. Diaz (Diaz Aff.) ¶¶ 6–9. To support its request, J&J presents an affidavit from its counsel, David M. Diaz, who estimates his fee at $1,000, based on approximately four hours of work at a rate of $250 per hour. *Id.* ¶ 9. Given this estimate, as well as the evidence and circumstances of the case, the Court finds J&J's request for $1,000 in attorney's fees to be more reasonable than a one-third contingent fee.

The Fifth Circuit has described the procedure and standard for determining attorney's fees as follows:

> The determination of a fees award is a two-step process. First, the court calculates the "lodestar" which is equal to the number of hours reasonably expended multiplied by the prevailing hourly rate in the community for similar work. The court should exclude all time that is excessive, duplicative, or inadequately documented. Once the lodestar amount is calculated, the court can adjust it based on the twelve factors set forth in *Johnson v. Georgia Highway Express, Inc.*, 488 F.2d 714, 717–19 (5th Cir. 1974).

*Smith v. Acevedo*, 478 F.Appx 116, 124 (5th Cir. 2012) (quoting *Jiminez v. Wood Cty*, 621 F.3d 372, 379–80 (5th Cir. 2010)). The *Johnson* factors are (1) time and labor required for the litigation; (2) novelty and difficulty of the questions presented; (3) skill requisite to perform the legal services properly; (4) preclusion of other employment; (5) customary fee; (6) whether the fee is fixed or

contingent; (7) limitations imposed by the client or circumstances; (8) amount involved and the result obtained; (9) experience, reputation, and ability of the attorneys; (10) "undesirability" of the case; (11) nature and length of the professional relationship with the client; and (12) awards in similar cases. *Johnson*, 488 F.2d at 717–19.

Although J&J has not offered invoices or other evidence proving Diaz worked the number of hours he claimed he did on this case, the Court accepts his estimate of his time and rates as reasonable, given his experience with anti-piracy cases and the authorities he provides. Doc 13-1, Ex. B, Diaz Aff.; Doc 13-1, Ex. B-1, David M. Diaz Resume; Doc 13-1, Ex. B-2, Texas Lawyer 2014 Salary and Billing Report. Accordingly, the Court sees no reasons to adjust these figures and finds that J&J's request for $1,000 in attorney's fees is appropriate.[2] As discussed below, however, the Court is deferring its award of damages until Plaintiff has an opportunity to supplement the record.

Though J&J is entitled to recover costs under the statute as well, it has not requested a specific amount, nor has it put forth any evidence on the issue. As a result, the Court is unable to determine how much to award, or even how to go about calculating that figure. For that reason, it **DENIES** J&J's request for costs at this time, though J&J may provide supplementary briefing and evidence establishing the amount of costs it seeks at a later time.

---

[2] In its proposed order, J&J also includes several conditional grants of attorney's fees for potential post-judgment and appellate work. Doc. 13-2, Proposed Order 2-3. Although J&J does not expound upon this request in its Motion, the affidavit of its counsel, David Diaz, lists various requests for fees that are contingent upon the occurrence of post-judgment events. Doc 13-1, Ex. B, Diaz Aff. ¶ 11. For example, J&J seeks a conditional award of $10,000 to be granted should the Defendants file a "post-judgment, pre-appeal motion," such as a motion to vacate. *Id.* Because this Court has granted reasonable attorney fees for the work actually performed, and because J&J has presented no argument or evidence establishing the reasonableness of these additional contingent fees, the Court **DENIES** this request.

4. Permanent Injunction

Lastly, J&J requests a permanent injunction against Defendants to prevent them "from intercepting or exhibiting an unauthorized program in violation of the [FCA]." Doc 13, Pl.'s Mot. 11. Under the FCA, a court may grant a final injunction "on such terms as it may deem reasonable to prevent or restrain violations" of the Act. 47 U.S.C. § 605(e)(3)(B)(i). But J&J provides no support for this request, and the Court finds an injunction is unnecessary to the extent it is merely intended to prevent Defendants from violating the FCA. The Court therefore **DENIES** J&J's request for a permanent injunction.

**IV.**

**CONCLUSION**

For the foregoing reasons, J&J's Motion for Default Judgment is **GRANTED in part** and **DENIED in part**. While Default Judgment is appropriate, the evidence before the Court is insufficient[3] to award damages that can be determined through mathematical calculation. Therefore, J&J may supplement the record with additional evidence on or before **Monday, July 3, 2017**.

---

[3] The Court notes that the evidence supporting an award for the additional damages and attorney's fees is sufficient, but the Court is deferring its award of these damages until after J&J supplements the record with evidence allowing the Court to calculate statutory damages.

SO ORDERED.

SIGNED: June 2, 2017.

_____
JANE J. BOYLE
UNITED STATES DISTRICT JUDGE